UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

KATHLEEN PERGENTILE,

                  **Plaintiff,**

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                  **Defendant.**

Civ. No. 16-1381 (KM)

**OPINION**

## KEVIN MCNULTY, U.S.D.J.:

Ms. Kathleen Pergentile brings this action pursuant to 45 U.S.C. 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is reversed and remanded for a step 5 determination.

### I.    BACKGROUND[1]

Ms. Pergentile seeks to reverse a decision that she did not meet the Social Security Act's definition of disability. Ms. Pergentile originally applied for DIB on July 8, 2011. (R. 233). The claim was denied initially on November 30, 2011, and upon reconsideration on February 15, 2012. (R. 36, 142–44).

---

[1]     Citations to the record are abbreviated as follows:

    "R." = Administrative Record (DE 11)

    "Pl. Br." = Brief in Support of Plaintiff Kathleen Pergentile (DE 16)

    "SSA Br." = Administration's responding brief (DE 18)

    "Reply Br." = Reply brief of Ms. Pergentile (DE 19)

1

An initial hearing was held before an ALJ on March 28, 2013. (Transcript at R. 70). On May 20, 2013, the ALJ rendered a decision denying benefits. (R. 117) On October 24, 2013, the Appeals Council vacated that decision and remanded for further consideration. (R. 131 *et seq.*) On remand, the ALJ was directed to clarify the alleged onset date; take additional medical evidence; consider past relevant work; and, if necessary, proceed to Step 5 and obtain evidence from a vocational expert. (*Id.*)

On remand, a second hearing was held before the ALJ on February 20, 2014. (Transcript at R. 26–69) At the hearing, Ms. Pergentile was represented by counsel. The ALJ heard testimony from Ms. Pergentile and from Mary D. Anderson, a vocational expert ("VE").

On May 12, 2014, the ALJ rendered the written decision denying benefits that is the subject of this appeal. (R. 12–20) On January 16, 2016, the Appeals Council denied Ms. Pergentile's request for review of the ALJ's decision, rendering it the final decision of the Commissioner. (R. 1)

Ms. Pergentile appealed to this Court, asserting that the ALJ erred in finding that she was not disabled from an amended onset date of June 23, 2009, through the date of the ALJ's decision. The case was transferred to me on October 15, 2018.

## II. DISCUSSION

To qualify for DIB (or Supplemental Security Income), a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to

factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or

if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Leonard Olarsch followed the five-step process in determining that Ms. Pergentile was not disabled from June 23, 2009 (the amended onset date) to February 20, 2014 (the date of her hearing). His findings may be summarized as follows:

**Step One:** At step one, Judge Olarsch determined that Ms. Pergentile had not engaged in substantial gainful activity since June 23, 2009, the amended onset date. (R. 14).

**Step Two:** At step two, the ALJ determined that Ms. Pergentile had the following severe impairments: diabetes mellitus, hypertension, cervical spine disc disorder, right shoulder impairment, status-post hysterectomy due to endometrial cancer and obesity. (R. 14).

**Step Three:** At step three, the ALJ found that Ms. Pergentile did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1 (R. 15).

**Step Four:** At step four, the ALJ considered "the entire record," including evidence received in connection with both the first hearing and the second hearing on remand. The ALJ found that Ms. Pergentile had "the following residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) except that she is limited to frequent fine fingering and gross handling; and occasional raising of right arm above shoulder." (R. 16)

The ALJ found that Ms. Pergentile's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects

5

of these symptoms are not entirely credible for the reasons explained in this decision." (R. 16)

The ALJ determined that Ms. Pergentile was "capable of performing past relevant work as a day care center director. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (R. 18–19)

Therefore, Judge Olarsch did not proceed to step 5, but found that Ms. Pergentile was "not disabled" under the Social Security Act. (R. 20).

### C. Analysis of Ms. Pergentile's Appeal

Ms. Pergentile challenges the ALJ's decision on several grounds.

At step three, Ms. Pergentile contends, the ALJ erred in finding that her impairments in combination were not equivalent to a listed impairment. She combines that analysis with her challenge to the ALJ's ruling at step four that her impairments, in combination, were not disabling but permitted her to perform sedentary work. (Pl. Br. 10–18) Finally, Ms. Pergentile asserts that the ALJ erred in finding that she could perform her past relevant work as a day care center operator, particularly as that job was actually performed by her. (Pl. Br. 18)

#### 1. The ALJ's Evaluation of Impairments

At step three, the ALJ found that Ms. Pergentile did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. Ms. Pergentile argues that the ALJ erred at step three because her impairments meet the requirements of diabetic neuropathy in all four extremities, citing listing 9.08 (diabetes mellitus). In addition, the ALJ allegedly failed to analyze whether her obesity, the effect of her prescription medications, and her subjective complaints were disabling. (Pl. Br. 13–16) Finally, she cites alleged errors in the ALJ's fact finding. (Pl. Br. 16–17)

Step 3 is designed to identify easy cases, *i.e.*, ones involving listed impairments in which a disability is so severe that it is not necessary to go any further in the analysis. *See* 20 C.F.R. § 416.925(a); *Sullivan v. Zebley*, 493 U.S.

6

521, 528–32 (1990). The claimant's impairments, alone or in combination, must meet all of the criteria of a listing. If not, then the ALJ will perform the more case-specific step 4 analysis of whether and to what extent the claimant's impairments are disabling.

   a. Diabetes

The alleged period of disability runs from 2009 to 2014. Diabetes mellitus, until 2011, was analyzed under listing 9.08; thereafter, the SSA was instructed to consider more directly resulting impairments to other body systems.[2] The ALJ discharged his duty to analyze the evidence, both of diabetes itself and of its potential effect on other body systems.

The diabetes, he found, was not always well controlled; the claimant took insulin as needed, and oral medication. Although she complained of numbness of the hands and loss of balance, there was no objective evidence of neurological deficits, and gait and station were found normal. Doctors had advised use of a cane when walking outside or for long distances, but no evidence showed that she could not walk without an assistive device. She complained of visual problems (visual problems can be associated with

---

[2] The SSA brief errs in stating that the claimant does not identify the listing in question; the ALJ's opinion cited listing 9.08, and so does plaintiff's brief.

> Former listing 9.08 "evaluated diabetes mellitus by inquiring whether the claimant suffered from neuropathy, frequent episodes of diabetic ketoacidosis, or severe retinal inflammation." *Christiansen v. Colvin*, No. 5:14–CV–1314–AKK, 2015 WL 875427, at *3 (N.D. Ala. Mar. 2, 2015).
>
> However, as of June 7, 2011, listing 9.08 has been replaced by revised Listing 9.00, Endocrine disorders, which states that the SSA "evaluate[s] impairments that result from endocrine disorders under the listings for other body systems," and provides examples of other disorders that may result. https://www.ssa.gov/disability/professionals/bluebook/9.00-Endocrine-Adult.htm; 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* Revised Medical Criteria for Evaluating Endocrine Disorders, 76 Fed. Reg. 19,692.

*Woods v. Comm'r of Soc. Sec.*, No. 2:16-CV-01657-KM, 2017 WL 2815075, at *4 (D.N.J. June 29, 2017)

7

diabetes), but ophthalmological examination showed no evidence of eye floaters, hemorrhage, macula or fundus abnormality. "There was no objective evidence of acidosis, neuropathy or retinitis as required by section 9.08." (R. 15)

The claimant objects that she "suffers from diabetic neuropathy in all 4 of her extremities, therefore meeting listing 9.08." (Pl. Br. 13) That argument, however, rests largely on her subjective complaints, which the ALJ discounted based on the lack of corroborating medical evidence.

At step 4,[3] the ALJ analyzed the evidence in more detail. Judge Olarsch noted Ms. Pergentile's complaints of numbness and tingling, contained in the records of the Community Health Center at Vauxhall, as well as a round of physical therapy in 2012 for gait dysfunction. A report of Dr. Kewalramani dated September 26, 2013, noted complaints of numbness and tingling but also states that Ms. Pergentile declined medication. The ALJ noted that there was no medical evidence of neuropathy in lower or upper extremities.

As to lower extremities, a consulting examiner, Dr. Patel, noted in October 2011 that the patient was neurologically intact and that reflexes and sensation were normal. The notes from the physical therapist stated that lower extremity strength was within normal limits; gait was independent, with some

---

[3] The claimant herself merges the discussion of steps 3 and 4. It is unclear whether she means to say that the ALJ failed to adhere to the step-by-step process outlined above. If so, any such error was surely harmless. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Id.*; see *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). True, a positive finding at step three might have eliminated the need to proceed through step four, and I recognize the necessity of ALJs' adhering to the five-step protocol. She does not offer a specific explanation of how the step 3 analysis would have differed, and without such an explanation I cannot conclude that her impairments, which failed at step 4, would have met the higher step 3 threshold. See *Holloman*, 639 F. App'x at 814-815 (finding harmless error at step three because the appellant, who bears the burden to demonstrate harm, does not offer "how Holloman might have prevailed at step three if the ALJ's analysis had been more thorough"); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand ....").

8

unsteadiness when walking or climbing stairs; but that the patient was able to self-correct.

As to upper extremities, there was no medical evidence of the neuropathy or carpal tunnel syndrome that was claimed at the February 2014 hearing, for example positive electromyography (EMG) or nerve conduction study (NCS) results. X-rays of the dominant right hand were normal, and the left hand showed only minimal degenerative changes.

In a prior functional report, Ms. Pergentile stated that she independently performed most daily activities, but limits herself (e.g., she shops but does not carry heavy grocery bags; she prepares light meals; she does laundry but does not carry laundry baskets). (R. 18) At the February 2014 hearing on remand, however, the claimant testified that she no longer does the laundry and cleaning, which are now done by relatives, but that she grocery shops and cares for the family dog. (R. 18)

There was substantial evidence supporting the ALJ's decision that the claimant's diabetes, alone or in combination with other impairments (*see infra*), did not meet the listings criteria and, while limiting, was not disabling.

### b. Right shoulder and hand impairment

MRI evidence showed mild to moderate tendinopathy and marked AC joint arthropathy. Tenderness and painful shoulder movement were present. No deformity or neurological deficits were present. Right hand x rays were normal, and the left shown only minimal degenerative changes. The claimant could perform fine and gross movements, and testified to being able to care for herself and use the computer. Based on that evidence, the ALJ did not err in finding that this impairment failed to meet the criteria of section 1.02B.[4]

---

[4]   **1.02 *Major dysfunction of a joint(s) (due to any cause)*:** Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

   . . . .

9

At step 4, the ALJ noted complaints of hand pain or weakness (i.e., a "bad grip"). Also noted, however, were the absence of positive EMG or NCS results. He noted that there had been a rheumatoid arthritis assessment in 2011 and psoriasis, but no positive laboratory findings or clinical observations of rheumatoid or psoriatic arthritis. There was persuasive medical evidence of a rotator cuff tear. (R. 16–18)

### c. Cervical spine disc disorder/Back pain

The ALJ noted x-ray evidence of spondylosis, worse at C4-5 and C5-6 levels, with foraminal stenosis. He acknowledged complaints of back pain. He noted, however, that there was no evidence of nerve root compression or evidence of neurological deficits in the upper extremities. Hence, the ALJ properly concluded that the evidence did not meet the requirements of listing 1.04A.[5]

At step 4, the ALJ noted additional evidence, including complaints of pain when lifting more than a 3 or 4 pound grocery bag. Treatment notes from 2009 indicated back pain that was responsive to Ibufrofen and Flexeril, with no indication of further treatment. The evidence of cervical disc disease, as well as the rotator cuff tear, corroborated complaints of shoulder pain. (R. 17)

### d. Hypertension/Microvascular disease

---

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

[5]  **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

Although hypertension was present, it was well controlled with medication. The ALJ properly concluded that, because there was no evidence of cardiac involvement, this impairment did not meet the listing of section 4.02 or 4.04.

At step 4, the ALJ noted complaints of dizziness, balance problems and weakness. He cited an examination by Dr. Kewalramani in 2013, who analyzed a brain/head CT scan and found nonspecific abnormality consistent with microvascular disease, but also found that an MRI scan showed no evidence of an acute infarct. There was no evidence of other cognitive or neurological findings.

### e. Uterine/post-endometrial cancer

In 2012, the claimant had suffered from uterine cancer (stage 1A, grade 1) and had a hysterectomy. Because there was no evidence of spread to the pelvic wall or other areas, and no recurrent treatment, the ALJ properly found that it did not meet the requirements of listing 13.23.

At step 4, the ALJ reviewed further evidence of this impairment. The claimant complained of residual uterine wall pain requiring her to sit 3 or 4 times per day.

### f. Obesity

The ALJ noted that the claimant was 5'4" to 5'5" tall and weighed 255–259 pounds. Obesity is primarily considered insofar as it aggravates the effects of other impairments on other body systems. ALJs must "consider [obesity's] effects when evaluating disability" and recognize that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Titles II & XVI: Evaluation of Obesity*, SSR 02-1p (S.S.A. 2002). Specifically, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." *Id.*

The ALJ's opinion inadvertently cuts off the end of a sentence: "Any effect the excess weight has had on other body systems is subsumed by the discussions of . . . ." (R. 15) In a proper case I would remand for clarification,

11

but I do not find it necessary here. The clear import is that the effect of obesity will not be discussed separately, but rather as it affects the the intensity of claimant's other symptoms—for example, her back pain or ability to walk, discussed *infra*. That is precisely what the obesity guideline, *supra*, directs the ALJ to do; to simplify a bit, obesity is treated as an aggravator of other impairments.

### g. Prescription medication effects

Counsel lists medications, but does not identify any medical evidence corroborating the alleged side effect of fatigue reported by Ms. Pergentile. To the extent such speculative effects may be present, they would be subsumed in other clinical observations and complaints.

### h. Miscellaneous/subjective complaints

The ALJ duly noted Ms. Pergentile's subjective complaints. These included numbness and tingling, dizziness, weakness, inability to stand more than 10-15 minutes, inability to sit longer than 40 minutes (or for an aggregate of six hours), back and uterine pain, shoulder pain, and pain when lifting more than 3 or 4 pounds.

The ALJ properly followed the prescribed procedures in considering the credibility of those claims.[6] As he was entitled to do, he concluded that although the impairments were real, and could be expected to produce pain and other symptoms, the claimed intensity of such symptoms was not credible in the context of the medical evidence. The claimant's counsel states that adverse factual findings can only be the product of the ALJ's having "ignored"

---

[6] First, the ALJ is to determine whether there is a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent they limit Plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1529(c)(2). "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms..." 20 C.F.R. § 404.1529(c)(2). Other relevant information includes what may precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 404.1529(c)(3).

evidence. That critcism is not well-taken; the ALJ cited and discussed the relevant evidence, including the claimant's subjective complaints.

Ultimately, "[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Credibility determinations are entitled to "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188-89 (3d Cir. 2007) (citing *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state her reasons for accepting or discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where this has been done, a reviewing court will defer to the ALJ's credibility determination.

Given the medical evidence, the ALJ was entitled to conclude that Ms. Pergentile was overstating the extent of her symptoms. Because he gave his reasons for doing so, I am bound to defer to his conclusions.

### 2. RFC

The ALJ did not give controlling weight to consultants' assessments that the claimant had a "light" RFC. Upon consideration of all impairments in combination, including balance problems, he imposed further limitations. The ALJ stated that walking and standing would be limited to 2 hours in an 8 hour work day, consistent with a "sedentary" RFC. (Sedentary work is one level below light work on the RFC scale.) Despite the lack of convincing evidence of peripheral neuropathy, he credited subjective complaints of tingling and numbness and cited the report of Dr. Kewlramani; accordingly, the ALJ limited the claimant's RFC to frequent fine fingering and gross manipulation. Based on the right rotator cuff tear, the ALJ credited Ms. Pergentile's complaints of pain; she should not, he found, engage in overhead lifting, and should be limited to occasional raising of the right arm above shoulder level.

13

I agree that the ALJ appropriately weighed the evidence, giving some credence to subjective complaints, discounting certain complaints in light of the objective medical evidence, and giving his reasons for doing so. In that manner, the ALJ arrived at a balanced assessment of the claimant's RFC and found that, with her limitations, she could perform sedentary work. Because that assessment was supported by substantial evidence of record, it must be upheld.

### 3. Past Relevant Work/Compliance with Remand

As noted above, the inquiry ends at step 4 if the ALJ finds that a claimant is capable of performing past relevant work. The parties agree that the issue of past relevant work is governed by S.S.R. 82-62.

> Social Security Regulation ("S.S.R.") 82–62 sets forth the evidence that an ALJ should consider in making this determination:
>
>> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

*Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009)

> Evaluating this evidence, the ALJ should determine whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the

14

national economy." S.S.R. 82-61. In the latter inquiry, the ALJ
may rely on job descriptions found in the Dictionary of
Occupational Titles ("DOT"). Id. "[I]f the claimant cannot perform
the excessive functional demands and/or job duties actually
required in the former job but can perform the functional demands
and job duties as generally required by employers throughout the
economy, the claimant should be found to be 'not disabled.'" Id.

*Garibay*, 336 F. App'x at 158.

### a. The Appeals Council's remand

Remanding the case on appeal from the ALJ's initial denial of benefits, the Appeals Council stated that the initial finding of not-disabled at Step 4 of the sequential evaluation process was questionable:

> At step 4 of the sequential evaluation process, the Administrative Law Judge fond the claimant was not disabled because she was capable of performing her past relevant work as a daycare center director as generally performed in the national economy (Findings 6 and 7). However, the Appeals Council concludes that a finding of not disabled at this particular step of the sequential evaluation process is questionable in light of the duties performed by the claimant as a daycare center director.

> Specifically, the claimant indicated in her Work History Report that she was responsible for all aspects of running a childcare center and a program for seniors, described as meals on wheels, which included preparing meals (Exhibits 3E). The multiple duties alleged by the claimant indicate her work as a daycare center director was a composite job. Pursuant to Social Security ruling 82-61, composite jobs have significant elements of two or more occupations and, as such has no counterpart in the dictionary of occupational titles. Where available documentation and vocational resource material are not sufficient to determine how a particular job is performed, vocational expert evidence is generally required to assist in that determination. A further evaluation whether the claimant can perform her past relevant work as a day care center director is done in the national economy is required.

The Appeals Council therefore ordered, among other things, that the ALJ on remand do the following:

15

> Further evaluate the claimant's ability to perform her past relevant work as a day care center director. Because the claimant described her job as a day care center director as a composite job (Exhibit 3E), the administrative law judge will obtain vocational expert evidence on the claimant's ability to perform the job. If it is determined that the claimant is unable to perform her past relevant work, the administrative law judge will proceed to step five of the sequential evaluation process.

(R. 132–33)

### b. The ALJ's analysis on remand

Ms. Pergentile worked until 2009 at a job that had the title of day care center director. As noted above, the ALJ must analyze the job as actually performed by the claimant, and also the job as it is generally performed in the national economy. *See Garibay, supra* (quoting S.S.R. 82–61).

The VE opined on a hypothetical based on Ms. Pergentile's testimony as to the job as actually, historically performed by her. Based on that hypothetical, the VE concluded that she would not be able to perform the job consistent with her RFC. (R. 19, R. 60–63) The actual job, as Ms. Pergentile described it, involved many functions beyond the routine administrative and supervisory functions of her job as director. For example, she was the only person with a teaching degree, and therefore was head teacher; she substituted for absent teachers four to five times per month; she filled in for absent teaching assistants, and other personnel; she would have to lift children weighing up to 70 pounds; she would receive deliveries and put away boxes weighing up to 50 pounds; she would sometimes cook and serve food, clean out clogged drains, or shovel snow.

In identifying the elements of the job as actually performed, the claimant's testimony is ordinarily conclusive: "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and non-exertional demands of such work." S.S.R. 82-62. Indeed, "[i]t is clear error to make a past relevant work determination that is contrary to

16

uncontroverted evidence presented by the claimant." *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 123 (3d Cir. 2000). There was no evidence contrary to Ms. Pergentile's description of her job duties, and there is nothing inherently incredible about, *e.g.*, a substitute teacher's having to lift a child from time to time.

The job, as Ms. Pergentile describes its actual performance, is inconsistent with a "sedentary" classification. *See* 20 C.F.R. § 404.1567, 416.967 (*inter alia*, lifting no more than 10 pounds). Those additional duties would seem to entail light or medium work exceeding the bounds of sedentary employment. The ALJ expressed skepticism about the claimant's description of her duties, believing that it was "exaggerated." (R. 19) Still, he did not get any more specific, or find that she was able to do her job as it was actually performed.

That is not the end of the inquiry. As noted above, a person unable to do her job as it was actually performed, but still able to do that job as customarily performed in the national economy (as evidenced by the DOT), will not be found disabled. *See Garibay, supra* (quoting S.S.R. 82–61). The ALJ, aided by testimony of the VE, found that the claimant was capable of performing the job of day care center director as generally performed in the national economy. That finding rested on the description of job duties in the Dictionary of Occupational Titles (DOT) (092.167-010, SVP 7, described as sedentary and skilled). (R. 19, 62–63)

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as generally performed.

(R. 19)

Ms. Pergentile, however, demurs; her former job, she says, is not properly regarded as "day care center director" as described in the DOT; it was a composite of different positions: day care director, head teacher, janitor, etc. That composite status, she points out, was accepted by the Appeals Council in its decision remanding the case.

Such "composite jobs" incorporate elements of two or more occupations and hence do not correspond to any single listing in the DOT. *See Standowski v. Colvin*, No. 13–05663, 2015 WL 404659, at *16 (D.N.J. Jan. 29, 2015). "To establish that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the claimant can perform *each job* within a composite job, whether as actually performed or as generally performed in the national economy." *Boggs v. Colvin*, No. 13–0111, 2014 WL 1277882, at *10 (M.D. Pa. Mar. 27, 2014). *See also Levyash v. Colvin*, No. CV 16-2189 (BRM), 2018 WL 1559769, at *11 (D.N.J. Mar. 30, 2018).

The ALJ's decision does not use the "composite job" terminology, but seems to implicitly reject such a conclusion. It analyzes Ms. Pergentile's job not as a composite job but rather as a unitary day-care-director position which, in this particular instance, carried with it certain incidental "chores":

> I note that I do not accept in its entirety the claimant's description of her actual job duties because among other things, I see no evidence of vocational training as a plumber or janitor. I find that the description of her other job duties are exaggerated. While there may be occasions in every job in which an individual might be called upon to do other chores, they do not convert the job into anything more than the DOT description of how it is done in the national economy. What other tasks the claimant actually testified to, in my opinion, are merely incidental to the important and skilled job of a day care center director.

(R. 19)

Although such a finding might be possible, it was not really supported here. The terms of the Appeals Council's remand, too, strongly suggest that the job should be treated as a composite one and analyzed as such by the VE. (R. 133 ("Because the claimant described her job as a day care center director as a composite job (Exhibit 3E),[7] the administrative law judge will obtain vocational expert evidence on the claimant's ability to perform the job."))

---

[7]  A work history report filled out by Ms. Pergentile in 2011. (R. 278)

18

If the past employment is a composite job, then the ALJ must find that the claimant was able to perform *each* of the components of it:

> "To establish that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the claimant can perform each job within a composite job, whether as actually performed or as generally performed in the national economy." *Boggs v. Colvin*, No. 13–0111, 2014 WL 1277882, at *10 (M.D. Pa. Mar. 27, 2014). Moreover, an ALJ may not "divide a composite job into two jobs and find the claimant capable of performing past relevant work based on the less demanding of the two jobs." *Id.*

*Levyash v. Colvin*, 2018 WL 1559769, at *11. The question, then, becomes one of characterization: Was the prior job a position defined by the DOT which happened in this case to have some excess or incidental duties? Or was the prior employment in fact a composite of two or more recognized jobs?

Here, the parties are less helpful in identifying just what DOT-recognized jobs are encompassed by Ms. Pergentile's additional duties. Two that are mentioned in the papers are "plumber" and "janitor." These the ALJ specifically discounted because the claimant lacked professional training in those fields. The job of "plumber" I disregard; occasional clearing of a clogged drain or toilet is more properly regarded as janitorial, as are the functions of mopping, snow shoveling, etc.[8] Lack of, *e.g.*, janitorial training is not a sufficient basis to conclude that Ms. Pergentile's job as actually performed did not include the functions of a janitor.

I conclude that a remand is required, but it could easily have been avoided. The ALJ conducted a hearing on remand, but stopped at step 4 (ability to do past relevant work). Such a step 4 analysis may serve the goal of efficiency by permitting the resolution of claims without the necessity of testimony by a VE. Here, however, the likelihood that this was a composite job had been flagged by the Appeals Council, requiring the testimony of a VE. A VE

---

[8]  Indeed, I take judicial notice that it is within the competence of a relatively unskilled judicial officer. Janitorial work appears to be a recognized category in the DOT (382.664-010), although this was not analyzed.

19

appeared at the hearing, and could easily have testified as to the step 5 issue: whether there are jobs in the national economy that a person with Ms. Pergentile's RFC could perform. That analysis was not done, and I cannot substitute my own (nonexistent) expertise in the labor markets for that of a VE, or my own fact finding for that of an ALJ. I will therefore hold as follows.

## CONCLUSION

The ALJ's analysis of steps 1 through 3 is supported by substantial evidence. The implied ruling that the claimant could *not* do the job as actually performed, and *could* perform the job of day care director as it exists in the national economy, is likewise supported by substantial evidence.

Substantial evidence would support a conclusion that this job, however, was not the job of day care director, narrowly defined. The ALJ's analysis did not grapple with the issue of this having been a composite job, encompassing to some degree the duties of teacher, janitor, or receiver of shipments. Ms. Pergentile's RFC would not permit the performance of those additional components of the composite job.

That was sufficient to shift the burden to the Commissioner at step 5. If the record suggested that no such sedentary jobs exist in the national economy, I would reverse outright. That appears unlikely, or at least debatable. I will therefore remand for the purpose of a step 5 assessment.

An appropriate order accompanies this opinion.

Dated: November 1, 2018

**KEVIN MCNULTY**
**United States District Judge**